The motion for new trial contains the general grounds only. The evidence, although entirely circumstantial, was sufficient nevertheless to authorize the verdict, and the court did not err in refusing a new trial.
Judgment affirmed. All the Justices concur.
 No. 14728. NOVEMBER 30, 1943.
B. B. Barclay and Charles Albert Osborne were jointly indicted for the murder of Rious Beckom. They were convicted and sentenced to life imprisonment. They moved for a new trial on the ground that the verdict was contrary to law and the evidence. The motion was overruled, and they excepted. On the trial substantially the following evidence was adduced: Chealey Seals, a witness for the State, testified to the effect that late in the afternoon of Saturday, August 29, 1942, while walking down a county dirt road he saw at a distance of three or four hundred yards an automobile parked on the road. Two white men and a negro were near the automobile. (The deceased was a negro man.) One of the white men drove the car up to a side road and turned around. When he drove off, the negro ran away from where the other man was, and staggered as he ran. The man in the car stopped, the other white man got into the automobile, and they went up the road following the negro that ran away. A hat was at the place *Page 144 
where the car had been parked, and some groceries were scattered about on the ground. The tracks of the man who ran continued up the road to a point around a curve, and could not be seen again from that point onward. A son of the deceased passed along this road a short time later, and recognized the hat and the sack in which the groceries had been carried as his father's. He also found a tooth on the ground, and another was found later. Seals described the manner in which the two white men were dressed and also described the automobile as to size and color. The defendants were seen that Saturday night by other witnesses, who testified that they were dressed substantially in the manner described by Seals, and that they were traveling in an automobile answering generally the description of the car he saw parked on the road. One witness testified to the effect that late on that Saturday afternoon, he saw the defendant Barclay driving an automobile on the dirt road described, and that two men were on the back seat, but he did not recognize them, and did not notice whether they were white or colored. Another witness testified to the effect that between seven and eight o'clock on the same Saturday afternoon, he saw an automobile traveling along the dirt road described; that the automobile answered generally the description of the automobile as given by Seals, and was driven by a white man; that Rious Beckom was sitting on the back seat with his head bent over, and that a white man was on the back seat with Beckom, but that he did not know either of the white men. Officers testified to the effect that Sunday, August 30, 1942, the fact that Rious Beckom had disappeared was reported. They went to the place on the dirt road described by Seals. Blood and two teeth were found on the ground. Tracks where the automobile turned around were found, the tracks appearing to have been made by an automobile with three slick tires and one with a fairly good tread. "One had a place in it like that, like a knot, worn out, and a boot or something in it made a funny place. I could plainly see that out there in the soft ground where they ran out to turn around . . we could follow it plainly." This track was followed by the officers to a wire fence near the river. Blood was found on bushes at the wire fence where the car stopped, and it appeared that something had been dragged to the river. Blood was on the bank of the river. A paper bag was found wadded up and bloody. A *Page 145 
place appearing to be where automobile seat covers had been burned was found; clots of what looked like blood were found in the ashes. The officers had seen the defendants together about twelve o'clock Saturday night dressed as were the men described by Seals, and driving an automobile of the same general description as given by him. They went to the home of Barclay, and his automobile was in the back yard. He and his wife were washing out the car. Blood was found on the floor in the back of the car, on the running board, and the back seat with blood on it was in the house. A monkey wrench with blood on it was in the car. The seat covers had been broken or torn loose, but were not untied, and had been removed from the car. Barclay and Osborne, who lived next door of Barclay, were arrested and placed in jail. The officers then returned to the river, and by following the tracks from the point where blood was found on bushes to the river, they found where something appeared to "slide down the bank in the mud. It was deep, still water there." The tracks followed were the tracks of two men. With a long stick the body of Rious Beckom was discovered submerged in the water. The body was located early in the evening of Sunday, August 30, 1942. The top part of the skull had been broken and crushed, and there was a round hole behind one ear which had the appearance of a bullet hole. "He had four fresh places where teeth had been knocked out. I found two of his teeth there on the road where they found the hat and groceries. The undertaker found the other two lodged in his throat." Dr. Herman D. Jones of Oglethorpe University School of Medicine testified to the effect that he tested the bloodstains on a handkerchief stained with blood from the floor of the Barclay car, the paper bag, the monkey wrench, the back and cushion of the seat of the automobile, and that the blood thus tested was type AB. He tested a specimen of blood taken from the head of the deceased and it was type AB. "Approximately six per cent. of human beings have type AB blood, that is, six out of a hundred."
The defendants denied knowledge of the crime. Barclay, when the blood was discovered in his car, said: "I could have been hauling a hog." In his statement on the trial of the case he said: "We picked up a wreck on the Sandersville road one night — three men, all were in a wrecked automobile. I believe it was a new Buick, turned bottom upwards out there, and I happened to be out there *Page 146 
at a fellow's house, and the wreck happened about one or two hundred yards maybe below the house. I went down there and got the fellows and put them in my car and brought them to Scott Hospital. That is all I know about the blood business — came off that fellow there." Both defendants, with reference to the automobile tracks leading to the river, said they did go to the river in the Barclay automobile together Sunday morning, and that they went out to the river for the purpose of exercising bird dogs.